1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    MOISES E. PONCE ALVAREZ,                    CASE NO. C16-0721RAJ

11                          Plaintiff,            ORDER

                v.

12
        KING COUNTY, *et al.*,

13
                            Defendants.

14

15                    **I.    INTRODUCTION**

16          This matter comes before the Court on Plaintiff Moises E. Ponce Alvarez's

17    Motions in Limine, (Dkt. # 42) and Defendant King County's Motions in Limine,

18    (Dkt. # 41).  Having considered the briefs submitted by the parties, relevant portions of

19    the record, and the applicable law, the Court **GRANTS in part** and **DENIES in part** the

20    parties' motions.

21                    **II.    BACKGROUND**

22          Plaintiff alleges that the Defendants, all King County Sheriff's deputies, used

1    excessive force while arresting him on May 21, 2014, in violation of the Fourth and

2    Fourteenth Amendments.  Dkt. # 1 at ¶¶ 5.1-5.6; 6.1-6.6.  Discovery has closed, the

3    dispositive motions deadline has passed, and trial is set for July 31, 2017.

4                              **III.    LEGAL STANDARD**

5           Parties may file motions in limine before or during trial "to exclude anticipated

6    prejudicial evidence before the evidence is actually offered."  *Luce v. United States*, 469

7    U.S. 38, 40 n.2 (1984).  To resolve such motions, the Court is guided by Federal Rules of

8    Civil Procedure 401 and 403.  Specifically, the Court considers whether evidence "has

9    any tendency to make a fact more or less probable than it would be without the

10   evidence," and whether "the fact is of consequence in determining the action."  Fed. R.

11   Evid. 401.  But the Court may exclude relevant evidence if "its probative value is

12   substantially outweighed by a danger of one or more of the following: unfair prejudice,

13   confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

14   presenting cumulative evidence."  Fed. R. Evid. 403.

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

ORDER - 2

# I. MUTUALLY AGREED MOTIONS IN LIMINE

1. The parties will not offer expert opinions that were not disclosed during discovery or that are otherwise improper.

2. Defendants will not use or offer any documents regarding the Plaintiff that were not produced by the Defendants during discovery.

3. The parties will not present exhibits that were not disclosed prior to trial in accordance with Federal Rule of Civil Procedure 26(a)(3).

4. The parties will not reference any settlement or settlement communications and will redact any records that reflect settlement communications.

5. Defendants will not present any evidence or make any references to any instances where Plaintiff was investigated, charged or convicted of a crime that is unrelated to the police conduct at issue in this case.

6. The Defendants will not refer to any potential impact the verdict may have on them or on the public's safety.

7. The Defendants will not present evidence regarding the "good character" or other "good" acts of the Defendants or any witnesses, unless the Plaintiff "opens the door" by placing the Defendants' or other witnesses' character at issue.

8. Defendants will not reference Plaintiff's immigration status.

9. The parties agree not to reference these motions in limine or any evidence that has been excluded.

10. Defendants will not make any claim or suggestion that they will be personally liable for compensatory or punitive damages.

11. The parties agree not to reference the Defendants' financial status, insurance or lack thereof.

12. Plaintiff will not reference unrelated internal investigations or disciplinary actions involving Deputies Buchan, Bertaina, Hennessy or Price, unless Defendants "open the door" to impeachment.

13. The parties agree not to refer to the "golden rule" or similar themes, whether directly or indirectly. This includes any argument that asks jurors to place themselves in the position of either party or to grant relief that they would feel entitled to if they were in the same position.

14. Defendants will not reference Plaintiff's past drug or alcohol use unless Plaintiff "opens the door."

15. Defendants will not reference or appeal to the self-interest of the jurors as taxpayers.[1]

---

[1] Mutually Agreed Motions in Limine Nos. 14-15 were agreed upon as represented on the record by the parties during the July 11, 2017 Pretrial Conference. Dkt. # 46.

1

## IV.    PLAINTIFF'S MOTION IN LIMINE

2

**A.    Failure to Mitigate**

3    Plaintiff seeks to exclude any evidence or argument that he failed to mitigate his

4    damages.  Dkt. # 42 at 6 (citing *Cox v. Keg Restaurants U.S., Inc*., 935 P.2d 1377, 1380

5    (Wash. App. Ct. 1997)).  "The doctrine of mitigation of damages imposes on a party

6    injured by either a breach of contract or a tort the duty to exercise reasonable diligence

7    and ordinary care in attempting to minimize its damages."  *Fleet Nat. Bank v. Anchor*

8    *Media Television, Inc*., 45 F.3d 546, 561 (1st Cir.1995).  "Whether a party was

9    reasonable in attempting to mitigate its damages is a highly fact-specific and contextual

10    inquiry."  *Performance Indicator, LLC v. Once Innovations, Inc.*, 56 F. Supp. 3d 99, 102

11    (D. Mass. 2014).

12    As background, Plaintiff claims that the Defendants' use of excessive force caused

13    ongoing, posttraumatic headaches, a claim that is supported by Dr. Huang's diagnosis.

14    Mendez Decl. (Dkt. # 34), Ex. 5 ("Dr. Huang Dep.") at 11:4-15; 22:16-24 (Dr. Huang

15    testified that Plaintiff's headaches were "most likely" caused by the assault and were

16    "posttraumatic . . . headaches.").  Defendants contend that there is evidence in the record

17    demonstrating that Plaintiff was prescribed glasses after the incident but has not been

18    wearing them.  Dkt. # 47 at 2.  The Defendants have submitted no evidence that wearing

19    glasses can mitigate posttraumatic headaches, relying entirely on the testimony of

20    Plaintiff and his treatment provider.  *See* Dkt. Dkt. #47 at 2 (quoting Alvarez Dep. at

21    106:18, 104:20-21) (Plaintiff testified that he "wouldn't be surprised" if he were told by a

22    doctor that he needs glasses, and responded to a question about whether he is supposed to

1  wear glasses: "I should, but I haven't"); *Id*. (citing Huang Dep. at 49:12-25, 50) (Dr.

2  Huang testified "that it would be relevant to her medical opinion and diagnosis of the

3  [P]laintiff to know whether or not he was supposed to wear glasses," acknowledging that

4  "a failure to wear glasses could lead to headaches").

5      At most, these statements demonstrate that Plaintiff *may* need glasses, and if so,

6  failure to wear the glasses *could* lead to headaches.  But Plaintiff has a diagnosis of

7  posttraumatic headaches, without evidence demonstrating a causal link between needing

8  glasses and posttraumatic headaches—or for that matter, evidence that Plaintiff has

9  actually been diagnosed with eyesight problems—Defendants impermissibly ask the jury

10  "to reach a result based on speculation and conjecture." *Cox v. Keg Restaurants U.S.,*

11  *Inc*., 935 P.2d 1377, 1380 (Wash. App. Ct. 1997) ("The issue should also not be

12  submitted if the evidence shows that a proposed treatment might not be successful or if

13  there is conflicting testimony as to the probability of a cure, because it is not

14  unreasonable for a plaintiff to refuse treatment that offers only a possibility of relief.").

15  Accordingly, Plaintiff's motion is **GRANTED**.

16              **V.    DEFENDANTS' MOTIONS IN LIMINE**

17  **A.    Evidence that Plaintiff was Acquitted of Criminal Charges Stemming from
         this Incident**

18

19      Defendants seek to exclude evidence that Plaintiff was acquitted of the charges

20  filed against him as a result of this incident.  Dkt. # 41 at 2.  Plaintiff concedes that a

21  prior acquittal is generally not admissible to prove facts upon which the acquittal may

22  have been based, but argues that in this case, the acquittal is relevant to a calculation of

ORDER - 6

1    his compensatory damages for "the emotional and psychological upheaval experienced"

2    during the criminal trial.  Dkt. # 48 at 2, 4.

3         Both parties cite the Ninth Circuit case, *Borunda v. Richmond*, 885 F.2d 1384,

4    1387-89 (9th Cir. 1988)—Defendants for the proposition that the Court should exercise

5    caution in allowing evidence of a prior acquittal, and Plaintiff to demonstrate that

6    evidence of acquittal is admissible when offered to demonstrate that "[P]laintiff incurred

7    damages in the form of having to go through a prior criminal action."  Dkt. # 41 at 3; Dkt.

8    # 48 at 3.

9         In *Borunda*, a Section 1983 case where the plaintiffs alleged that there had been

10   no probable cause for their arrest, the court held that evidence of the plaintiffs' acquittals

11   was appropriately admitted "solely for the purpose of showing that the plaintiffs incurred

12   damages in the form of attorneys' fees in successfully defending against the state

13   criminal charges."  885 F.2d at 1388.  In affirming the district court's admission of the

14   acquittals, however, the court cautioned that evidence of the acquittals had the potential

15   to be highly prejudicial and such prejudice should be carefully mitigated by a limiting

16   instruction.  *Id*. at 1388-89; *see also Monroe v. Griffin*, 14-CV-00795-WHO, 2015 WL

17   5258115, at *4 (N.D. Cal. Sept. 9, 2015) ("If accompanied by an appropriate limiting

18   instruction, evidence of an acquittal may be introduced in a section 1983 action for the

19   purpose of establishing the plaintiff's damages claim."); *Torres v. City of Santa Clara*,

20   No. 13–cv–01475–PSG, 2014 WL 4145509, at *5 (N.D. Cal. Aug. 20, 2014) (evidence of

21   acquittals "may not be admitted to prove up facts upon which the acquittals were based,

22

but might be admissible to prove another issue in dispute) (internal quotation marks

omitted).

Plaintiff has identified a permissible purpose for the evidence that he was

acquitted.  Accordingly, this motion is **DENIED in part and GRANTED in part.**

Subject to a specifically tailored limiting instruction, evidence of Plaintiff's acquittal may

be introduced at trial for the purpose of demonstrating compensatory damages.  The

Court directs Defendants to submit a proposed limiting instruction no later than Friday,

July 28, 2017.  The Court will give the limiting instruction during trial when appropriate

and as requested by counsel.

**B.     Evidence of the Destruction of King County Sheriff's Department Radio
         Recordings**

Defendants seek to exclude any evidence that King County destroyed recorded

Master 911 tapes, which may have documented the interactions between police officers

during the incident in the alley.  Dkt. # 41 at 4-5.  While Defendants concede that

Plaintiff's criminal defense counsel requested that the King County Prosecuting Attorney

preserve these recordings, Defendants claim that the Prosecutor failed to relay this

request to the King County Sheriff's Office and argue that the Prosecutor's negligence

should not be attributed to the Defendants.  *Id*. at 4.  Plaintiff contends that Defendants

were on notice of the need to preserve the recordings, and, failing to do so constitutes

spoliation.  Dkt. # 48 at 4-8.  Plaintiff therefore requests an adverse jury instruction

regarding Defendants' failure to preserve these recordings.  *Id*. at 8.

"A litigant is under a duty to preserve evidence in its possession or control that

the party knows or should have known is relevant to litigation or which might lead to the

discovery of admissible evidence." *Perez v. United States Postal Serv*., No. C12-00315

RSM, 2014 WL 10726125, at *3 (W.D. Wash. July 30, 2014). "The duty to preserve

precedes the filing of a complaint, attaching as soon as a party 'should reasonably know

that evidence may be relevant to anticipated litigation." *Id*. (quoting *Surowiec v. Capital

Title Agency, Inc*., 790 F. Supp. 2d 997, 1005 (D. Ariz.2011)). A party engages in

spoliation "as a matter of law only if they had some notice that the documents were

'potentially relevant' to the litigation before they were destroyed." *Akiona v. United

States*, 938 F.2d 158, 161 (9th Cir.1991). The party requesting sanctions for spoliation

has the burden of proof on such a claim. *Hammann v. 800 Ideas, Inc*., 2:08-CV-00886-

LDG, 2010 WL 4943991, at *7 (D. Nev. Nov. 22, 2010). The applicable standard of

proof in the Ninth Circuit appears to be by a preponderance of the evidence. *Id*.

  In the criminal matter, Plaintiff requested:

> A copy of any "911 tapes" or other tape recordings containing information relative
> to this case and all radio broadcasts and transmissions occurring between the
> officer(s) who detained, arrested and/or transported the defendant on the date of
> the alleged incident herein, and any other agency, officer, communications center
> or station during the course of the detention, arrest, transportation, testing and
> booking or charging of the defendant[.]

Dkt. # 48, Ex. 2 ¶ 13. Plaintiff claims the request encompasses three types of

information: the initial 911 call recording, the computer-aided dispatch ("CAD")

recordings, and the recordings made by devices worn by the Defendants during the

incident. Dkt. # 48 at 4-5. The Plaintiff and Defendants refer to this last category

differently—Plaintiff describes the missing recordings as Master 911 tapes, while

1    Defendants describe these as "recordings of radio transmissions between the officers"—

2    but the parties agree that these recordings were not produced and have been destroyed.

3    Dkt. # 41 at 4; Dkt. # 48 at 5.  Only the initial 911 call and the CAD recordings have been

4    produced.  Dkt. # 48 at 5.

5            The Court finds that the language of Plaintiff's request—"tape recordings

6    containing information relative to this case and all radio broadcasts and transmissions

7    occurring between the officer(s)"—encompasses the destroyed radio recordings between

8    the officers.  Dkt. # 48, Ex. 2 ¶ 13.  And Plaintiff's request—submitted July 16, 2014—

9    was made within 90 days, before the recordings were subject to routine destruction.  *Id*.,

10   Ex. 2-3.  However, while the King County Prosecuting Attorney failed to take the

11   necessary steps to preserve the recordings, there is no evidence that the remaining

12   Defendants in this action—all individual officers of the King County Sheriff's

13   Department—were aware of Plaintiff's request or the Prosecutor's failure to carry out

14   that request.  Dkt. # 41 at 5; *see Hammann*, 2010 WL 4943991, at *7 (stating that the

15   party requesting sanctions for spoliation has the burden of proof on such a claim).

16           Defendants argue that it would be unjust to sanction the Defendants for the

17   negligence (or worse) of the King County Prosecutor and King County itself.  *Id*.  The

18   Court agrees.  Any analysis of appropriate sanctions would require the Court to determine

19   the Defendants' degree of fault in destroying the evidence.  *See e.g.*, *Compass Bank v.*

20   *Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015)

21   ("Ultimately, the choice of appropriate spoliation sanctions must be determined on a

22   case-by-case basis, and should be commensurate to the spoliating party's motive or

1    degree of fault in destroying the evidence.").  In this case, there is no evidence that the

2    Defendants were at fault, or that they were aware of the request to preserve evidence.

3    The Plaintiff has cited no authority for the proposition that the Defendants can be

4    sanctioned for the negligence of the County.  The Court therefore **GRANTS** this motion.

5    **C.    Evidence That Alternative Means or Tactics Should Have Been Used**

6          Defendants seek to exclude any attempt by the Plaintiff to second-guess the

7    Defendants' decision-making prior to the physical altercation with Plaintiff.[2]  Dkt. # 41 at

8    6.  The Court finds the Defendants' motion unworkable; prohibiting the Plaintiff from

9    second-guessing the Defendants' actions would prohibit Plaintiff from making arguments

10   about the totality of the circumstances that are crucial to his excessive force claims.

11         "Because '[t]he test of reasonableness under the Fourth Amendment is not capable

12   of precise definition or mechanical application'. . . its proper application requires careful

13   attention to the facts and circumstances of each particular case, including the severity of

14   the crime at issue, whether the suspect poses an immediate threat to the safety of the

15   officers or others, and whether he is actively resisting arrest or attempting to evade arrest

16   by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Bell v. Wolfish*, 441

17   U.S. 520, 559 (1979)) (internal citations omitted).  The analysis then is "whether the

18   officers' actions are 'objectively reasonable' in light of the facts and circumstances

19   confronting them, without regard to their underlying intent or motivation."  *Id*. at 397.

20

21         [2] The Defendants provide examples of the type of alternative actions the Plaintiff may
     suggest: "ordering the [P]laintiff out of his car via the patrol vehicle's loudspeaker, asking him
     for identification before ordering him out of the vehicle, or waiting for backup prior to
22   approaching the [P]laintiff."  Dkt. # 41 at 6.

1  This analysis cannot be performed "in the absence of any argument or evidence that

2  would second guess the actions of any officer *leading up* to the point that the encounter

3  with Mr. Ponce Alvarez became physical," as Defendants suggest. *Id*. at 6 n. 1 (emphasis

4  in original); *Billington v. Smith, et. al.*, 292 F.3d 1177, 1182-83 (9th Cir. 2002) ("Our

5  precedents do not forbid any consideration of events leading up to [an alleged

6  constitutional violation]."); *Bonner v. Normandy Park*, C07-962RSM, 2008 WL

7  4766822, at *4 (W.D. Wash. Oct. 29, 2008) (same).

8       Accordingly, Defendants' motion is **DENIED**.

9  **D.   Evidence Regarding Policies of the King County Sheriff's Office**

10      Defendants seek to exclude Plaintiff's proposed Exhibit Four, a 450 page

11  collection of policies regarding the operation of the King County Sheriff's Office.  Dkt.

12  # 41 at 8.  In support of their argument, Defendants cite *Whren v. United States* for the

13  proposition that whether an officer complies with department policies or practices is

14  immaterial to the question of an individual officer's liability under the Fourth

15  Amendment.  Dkt. # 41 at 8 (citing 517 U.S. 806, 815 (1996)).  But Defendants overstate

16  the holding in *Whren*, where the Supreme Court found that "police enforcement

17  practices . . . vary from place to place and from time to time" and should therefore never

18  be the touchstone of a Fourth Amendment inquiry.  517 U.S. at 815.  Thus, a police

19  officer's failure to follow departmental policy should never prove a Fourth Amendment

20  claim.  *Id*. at 216.  Nevertheless, *Whren* never explicitly found that such practices should

21  be completely excluded from the evidence.  In fact, the Supreme Court explained that its

22

1   findings did not "purport[ ] to find an answer, but merely one that leaves the question

2   open." *Id*. at 816.

3         As applied to this case, any allegation that the Defendants violated the policies of

4   the King County Sheriff's Office certainly does not prove that Plaintiff's constitutional

5   rights were violated.  It is, however, a factor the jury may consider in evaluating an

6   individual's excessive force claim.  *See Bonner v. Normandy Park*, No. C07-962RSM,

7   2008 WL 4766822, at *2 (W.D. Wash. Oct. 29, 2008) (finding that an officer's violation

8   of departmental policy is a valid consideration when assessing whether an officer used

9   excessive force in violation of an individual's Fourth Amendment rights).

10        Nevertheless, the Court does not have the necessary information before it to

11   contemplate the relevance of each of the 450 pages of Plaintiff's proposed Exhibit.

12   Should any of these pages be irrelevant to the issues in this case, they are inadmissible.

13   Fed. R. Evid. 401.  Plaintiff is therefore directed to extract the relevant sections of

14   Exhibit Four and submit only those to the jury.

15        Therefore Defendants' motion in limine with respect to this issue is **DENIED in**

16   **part and GRANTED in part**.

17   **E.    Evidence Regarding Administrative Use of Force or Internal Investigation**

18        Defendants seek to exclude any evidence—including Defendants' statements—

19   from an internal investigation conducted by the King County Sheriff's Office into

20   Plaintiff's arrest. Dkt. # 41 at 10-11.  Defendants argue that any evidence of this

21   investigation is irrelevant and unfairly prejudicial, and should therefore be excluded

22   pursuant to Federal Rules of Evidence 401 and 403.  *Id*. at 10.  Defendants further argue

1    that evidence of the investigation should also be considered a "subsequent remedial

2    measure" and therefore inadmissible under Federal Rule of Evidence 407. *Id*. at 11.

3         In turn, Plaintiff clarifies that he intends to use statements from the internal

4    investigation only in the instance that any Defendant makes a prior inconsistent

5    statement. Dkt. # 48 at 10. According to Plaintiff, such a statement would be admissible

6    under Federal Rule of Evidence 801(d)(1)(A). Dkt. # 48 at 10. Plaintiff "recognizes that

7    when offering such a prior statement it should be done without discussing the specifics of

8    the proceeding that lead to the prior statement. Consequently, [P]laintiff does not seek to

9    introduce evidence of the prior investigation in and of itself." *Id*.

10         The Court finds that Plaintiff may properly introduce Defendants' statements

11    made in the course of the King County Sheriff's Office internal investigation for the

12    purpose of impeaching the witness in accordance with Federal Rule of Evidence 801(d).

13    *See Gonzalez v. Olson*, 11 C 8356, 2015 WL 3671641, at *17 (N.D. Ill. June 12, 2015)

14    ("Prior statements made as part of the [] investigation may be used for impeachment or as

15    a party admission when appropriate."); *Tatum v. Clarke*, 11-C-1131, 2015 WL 6392609,

16    at *15 (E.D. Wis. Oct. 22, 2015) ("An investigation does not mean that there was

17    improper conduct by an officer or agent of the investigating agency; it merely means that

18    the agency felt it appropriate to review the matter. However, that does not mean that

19    Tatum should not be allowed to offer any evidence of an internal investigation."); *United*

20    *States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp.2d 698, 710 (S.D.N.Y. 2011)

21    ("Defendants may cross-examine cooperating witness regarding statements they made

22

ORDER - 14

1    during investigatory interviews and may use the notes or reports to refresh witnesses'

2    recollections.").

3        However, Defendants argument that evidence of the investigation should also be

4    considered a "subsequent remedial measure" and therefore inadmissible under Federal

5    Rule of Evidence 407 is well taken.  *Id.* at 11; *See also Maddox v. Los Angeles*, 792 F.2d

6    1408, 1417 (9th Cir.1986) (excluding evidence of a police department investigation as a

7    subsequent remedial measure in a civil rights suit brought pursuant to 42 U.S.C. § 1983);

8    *Specht v. Jensen*, 863 F.2d 700, 701 (10th Cir.1998) (excluding, under Rule 407, a

9    statement of remedial steps to be taken in an illegal search suit brought pursuant to 42

10   U.S.C. § 1983); *Gilanian v. City of Boston*, 431 F.Supp.2d 172, 177 (D. Mass. 2006);

11   *McLaughlin v. Diamond State Port Corp.*, 2004 U.S. Dist. LEXIS 26351, at *11, 2004

12   WL 3059543 (D.Del. Dec. 30, 2004) ("Just as subsequent remedial measures are

13   generally inadmissible under Fed. R. Evid. 407, a defendant's attempt to reverse allegedly

14   discriminatory practices should also be inadmissible. It would be perverse indeed if

15   attempts to reverse discrimination could be used to condemn a defendant. Such use of

16   evidence would only serve to discourage reform, and the court will not permit it.").

17       The Court therefore will not permit Plaintiff to introduce the fact of the

18   investigation in and of itself, but Plaintiff may introduce statements made in the course of

19   the King County Sheriff's Office's internal investigation solely for impeachment

20   purposes, and only after demonstrating to the Court, *in camera* or in sidebar, that the

21   statement would in fact impeach the witness in accordance with the requirements of

22   Federal Rule of Evidence 801(d).

1        Accordingly, Defendants' motion is **DENIED in part and GRANTED in part**.

2   **F.    Testimony of Plaintiff's Designated Police Practices Expert, Gregory
            Gilbertson**

3            Defendant seeks to exclude the testimony of Plaintiff's police practice expert,

4   Gregory Gilbertson, on the grounds that Mr. Gilbertson (1) offers no permissible

5   testimony or analysis regarding the Defendants' use of force in this incident relative to

6   commonly accepted police practices; (2) offers only impermissible opinions on

7   Defendants' credibility; (3) offers irrelevant opinions regarding Defendants' behavior in

8   light of the King County Sheriff's Department's policies, and; (4) proffers unreliable

9   opinions.  Dkt. # 41 at 12-16.

10           The Court finds Defendants' concerns unwarranted.  "Courts have generally

11  admitted expert testimony on police practices and the use of force in cases involving

12  allegations of excessive force and police misconduct."  *Morales v. Fry*, No. C12-2235-

13  JCC, 2014 WL 12042563, at *3 (W.D. Wash. Mar. 25, 2014).  However, in determining

14  whether such testimony is admissible, the Court "must ensure that any and all [expert

15  testimony] is not only relevant, but reliable."  *Id.* (citing *Daubert v. Merrell Dow

16  Pharms.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137,

17  147 (1999) (extending *Daubert*'s requirements of relevance and reliability to non-

18  scientific testimony)).  "In addition to broad latitude in determining whether an expert's

19  testimony is reliable, the Court also has discretion in deciding how to determine the

20  testimony's reliability."  *Id.*  "In the context of non-scientific testimony, the *Daubert*

21  factors are not applicable; the reliability depends primarily on the knowledge and

22

1   experience of the expert 'rather than the methodology or theory behind it.'" *Id.* (quoting

2   *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)).  In

3   this case, Defendants challenge both the reliability of Mr. Gilbertson's testimony and its

4   relevance.

5        First, the Court finds that Mr. Gilbertson's testimony appears relevant to the

6   Plaintiff's claims.  To the extent Defendants argue that Mr. Gilbertson offers no

7   permissible testimony or analysis regarding the Defendants' use of force in this incident,

8   but only inappropriate commentary on legal issues or ultimate issues of fact, the Court

9   disagrees. Dkt. # 41 at 14.  While neither party has submitted Mr. Gilbertson's report for

10  the Court's review, Plaintiff contends that Mr. Gilbertson's testimony "will be limited to

11  a comparison [of] the alleged misconduct by defendant police officers and generally

12  accepted police practices." Dkt. # 48 at 13.  Such testimony is permissible. *See e.g.,*

13  *Paine ex rel. Eilman v. Johnson*, 06-CV-3173, 2010 WL 785394, at *2 (N.D. Ill. Feb. 26,

14  2010) ("[W]here qualified to do so and where their testimony is otherwise relevant,

15  experts may testify as to nationally accepted standards of police conduct . . . .").

16       Further, Mr. Gilbertson appears aware of the appropriate limits of an expert

17  opinion, as demonstrated by the example submitted by the Defendants. *Compare* Dkt.

18  # 41 at 14 (citing Mr. Gilbertson's expert report) ("The question of whether the force

19  employed by MPO Adam Buchan, Deputy Cassandra Bertaina, Deputy James Price, and

20  Deputy Jonathan Hennessy against Moises Ernesto Ponce Alvarez on May 21st, 2014, in

21  White Center, Washington, was objectively reasonable, necessary, and proportionate as

22  defined in the case of *Graham v. O'Connor* and by the [Fourth] Amendment to the

1   United States Constitution is for a jury to consider and deliberate."), *with*, *Morales*, 2014

2   WL 12042563, at *3 (experts "may not offer any opinion that goes beyond explaining the

3   industry standards relevant to the case and whether the officers' conduct in this case

4   comports with those standards.  He should not indicate, in any way, whether any conduct

5   was 'reasonable under the circumstances,' 'objectively reasonable,' or 'justified' under

6   the circumstances.") (citing *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)).

7          Second, while the Court shares the Defendants' concerns that Mr. Gilbertson, or

8   any expert, would offer "only impermissible opinions on Defendants' credibility," Mr.

9   Gilbertson may testify regarding the alleged misconduct by defendant police officers, and

10  the facts that support that conclusion, including any apparent inconsistencies in

11  Defendants' statements or police reports based on comparisons to other relevant facts in

12  the case.  Dkt. # 41 at 14.  However, the Court cautions that Mr. Gilbertson will not be

13  permitted to testify to the credibility of other witnesses, as credibility determinations are

14  the province of the jury.  *Creach v. Spokane Cty.*, CV-11-432-RMP, 2013 WL 12177099,

15  at *2 (E.D. Wash. May 2, 2013) (citing *United States v. Binder*, 769 F.2d 595, 602 (9th

16  Cir. 1985)).

17         Third, while evidence that Defendants violated a King County Sheriff's

18  Department policy is not evidence of a constitutional violation, it may be relevant to the

19  jury's understanding of the totality of the circumstances surrounding Plaintiff's arrest and

20  thus Mr. Gilbertson's testimony on the matter would be relevant.  *See supra*, Section

21  V.D.

22

1    Finally, Defendants argue that Mr. Gilbertson's testimony regarding the

2    Defendants' potential violation of King County Sheriff's Department policies is

3    unreliable because he has no familiarity with the specific practices or procedures of the

4    King County Sheriff's Department.  Dkt. # 41 at 15.  But specific knowledge of the

5    inner-workings of the King County Sheriff's Department is not necessary for Mr.

6    Gilbertson to reliably testify to a comparison of the alleged misconduct by defendant

7    police officers and generally accepted police practices.  Dkt. # 48 at 13.  "Reliability

8    requires that the expert's testimony have 'a reliable basis in the knowledge and

9    experience of the relevant discipline.'"  *Eagle W. Ins. Co. v. SAT, 2400, LLC*, No. C15-

10   1098RSL, 2016 WL 7017656, at *1 (W.D. Wash. Oct. 24, 2016) (quoting *Kumho Tire

11   Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)).

12   Plaintiff has submitted a list of Mr. Gilbertson's qualifications, which demonstrate

13   extensive experience in policing.  *See* Dkt. # 48 at 13.  Mr. Gilbertson's experience

14   includes work as a police officer in Georgia and Washington, including assignments as a

15   "SWAT team officer, superior court investigator, school resource officer, squad officer,

16   senior patrolman, and patrolman."  *Id*.  After his law enforcement career, Mr. Gilbertson

17   went on to become a college professor—where he taught courses on criminal justice—

18   and a private investigator, "conducting pretrial investigations for attorneys throughout

19   Washington State in hundreds of criminal cases."  *Id*.  The Court finds that, based on his

20   experience, Mr. Gilbertson's testimony can be expected to have "a reliable basis in the

21   knowledge and experience of [police practices]."  *Kumho*, 526 U.S. at 149.  The Court

22

1    further finds that Defendants' concerns can be fully addressed through

2    cross-examination.  Therefore, the Court **DENIES** Defendants' motion.

3                          **VI.    CONCLUSION**

4           For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion in Limine, Dkt.

5    # 42, and **GRANTS in part** and **DENIES in part** Defendants' Motions in Limine,

6    Dkt. # 41.  In doing so, the Court reminds the parties that an attorney or witness who

7    violates any of the above evidentiary rulings runs the risk of opening the door to the

8    admission of evidence that would otherwise be precluded by this Order.  In reference to

9    Defendants' Motion in Limine No. Seven, *supra* Section V.A, the Court directs

10   Defendants to submit proposed limiting instruction no later than Friday, July 28, 2017.

11          DATED this 27th day of July, 2017.

12

13

14

15   The Honorable Richard A. Jones
     United States District Judge

16

17

18

19

20

21

22

ORDER - 20