UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOISES E. PONCE ALVAREZ,

    Plaintiff,

    v.

KING COUNTY, et al.,

    Defendants.

Case No. C16-721-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for New Trial. Dkt. # 88. Defendants oppose the Motion. Dkt. # 89. For the reasons stated below, the Court **DENIES** Plaintiff's Motion.

## II. BACKGROUND

Plaintiff Moises E. Ponce Alvarez filed a complaint against Defendants King County, Deputy Cassandra Bertaina, Deputy Adam R. Buchan, Deputy Jonathan Hennessy, Deputy James Price, and John Does 1-2, alleging claims under 42 U.S.C. § 1983 against the officers for excessive force in violation of the Fourth and Fourteenth Amendments, *Monell* claims under 42 U.S.C. § 1983 against King County for maintaining unconstitutional policies and practices, failure to train, and failure to supervise, a Washington state claim for assault and battery, and a Washington state claim for negligent use of force. On June 23, 2017, the Court granted in part and denied in part Defendants' motion for summary judgment. Plaintiff's *Monell* claims, his state law

ORDER – 1

claims, and his §1983 claims against Bertaina were dismissed. Dkt. # 38. On August 10, 2017, at the conclusion of trial, the jury did not find, by a preponderance of the evidence, that Defendants Buchan, Price, and Henessy, violated Plaintiff's right under the Fourth Amendment to be free from excessive use of force. Dkt. # 82. On September 11, 2017, Plaintiff filed this Motion for a New Trial. Dkt. # 88.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 59(a) provides that a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).

Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Included among these historically recognized grounds are claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co v. Duncan*, 311 U.S. 243, 251 (1940)). Ordinarily, a "trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

## IV. ANALYSIS

A claim for excessive force requires a showing that the defendant used an objectively unreasonable degree of force. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Assessing whether a law enforcement officer's use of force was reasonable "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'' against the countervailing governmental interests at stake." *Id.* at

ORDER – 2

396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks omitted)). The following are factors that may be considered when determining the reasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015); *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007); *Graham*, 490 U.S. at 396. Plaintiff argues that the jury's finding that he did not show by a preponderance of the evidence that Defendants used an excessive amount of force is contrary to the weight of evidence presented at trial.

On May 21, 2014, Buchan was dispatched to a 911 call in the White Center neighborhood of Seattle. While searching the alley behind the caller's house, Buchan encountered Plaintiff in his vehicle. The parties dispute what initially occurred in the alley, but eventually Buchan grabbed Plaintiff and pulled him out of the car. Plaintiff began struggling with Buchan. Shortly thereafter, Bertaina arrived and both deputies forced Plaintiff to the ground, using their body weights as leverage. As Plaintiff continued to struggle, Buchan and Bertaina remained on top of him until Price and Henessy arrived. Plaintiff was then handcuffed, but continued to kick and flail at the deputies. The decision was then made to double restrain Plaintiff, or "hog-tie" him. The double restraint was used to secure Plaintiff's feet to each other, and then bind his feet to his handcuffs. A person that is "hog-tied" cannot stand up, walk, or kick. The parties dispute how long Plaintiff remained hog-tied. Plaintiff contends that he was in the double restraint for 40 minutes. Defendants testified that they did not know how long the double restraint was used, but that Plaintiff continued to writhe on the ground after the double restraint was applied. Dkt. # 88 Exs. 1, 2; Dkt. # 90 Exs. A, B.

Plaintiff argues that hog-tying someone for 40 minutes "crosses the line into

ORDER – 3

unreasonable force." In support of this argument, Plaintiff cites to the factors in *Kingsley*, arguing that the circumstances surrounding Plaintiff's arrest were such that Plaintiff did not present a threat to Defendants, therefore allowing Plaintiff to remain restrained for that long constituted an unreasonable degree of force. Dkt. # 88.

The relevant Computer Aided Dispatch ("CAD") report notes that "[w]e have [Plaintiff] double restrained" at 12:43:31, or 12:43 a.m. Dkt. 88 Ex. 4. The notation at 1:22:49, or 1:22 a.m., states "[s]ubject was released from double restraints." *Id*. Plaintiff argues that this evidence establishes that he was in double restraints from 12:43 a.m. until 1:22 a.m., or for about 40 minutes. Susan Gordon, the administrator of the CAD system in the King County 911 Communications Center, testified that these entries were made by a dispatcher and that they do not necessarily reflect the actual time that the events occurred. Dkt. # 90 Ex. C. Gordon also testified that CAD entries are not always contemporaneous to the events described for several reasons: 1) a dispatcher may be handling more than one call at a time and may "jump back and forth" between events to make entries, (2) there may be a lag in time because communications are not added to the CAD report until the dispatcher actually updates it, and (3) occasionally a dispatcher is not told about an event at the time it occurs and the event is added later with a time override. *Id*. Entries to a CAD report can also be made by a deputy from the computer in his or her police vehicle. The relevant entries here are not marked as entries made by a deputy or entries made with a time override. Dkt. # 91 at 4.

Plaintiff also points to the reported activities of Buchan and the other deputies while he was hog-tied as evidence of the length of time he was restrained. Buchan testified that after Plaintiff was placed in double restraints, the deputies ran Plaintiff's name and license plate through their computers. Dkt. # 88 Ex. 1. Buchan then went to speak to the person who called 911 and had a discussion with the other deputies about what to do next. *Id*. At some point Buchan wrote the necessary forms for the arrest and gave these forms to Bertaina so she could transport Plaintiff to jail. *Id*. It is unclear from

ORDER – 4

the evidence presented at trial at what point after Buchan spoke to the other deputies Plaintiff was released from the double restraints. Additionally, both Buchan and Price testified at trial that they did not remember how long Plaintiff was in double restraints, but that Plaintiff was not double restrained for 40 minutes. Dkt. # 90 Exs. A, B. Plaintiff testified that he did not know how long he was double restrained because he lost consciousness shortly after being handcuffed. Therefore, a determination of the length of time Plaintiff was restrained required consideration of the accuracy of the CAD report notations, consideration of the other evidence presented regarding the events surrounding Plaintiff's arrest, and a determination of the credibility of the witnesses.

Even if it was determined that Plaintiff was double restrained for 40 minutes, that determination alone is not sufficient to conclude whether the amount of force used was unreasonable. Plaintiff argues that the amount of time qualifies as an excessive amount of force because the evidence does not prove that Plaintiff continued to resist arrest after Defendants placed him in double restraints. At trial, police practices expert, Christopher Myers, testified that the use of double restraints is appropriate "as long as the person presents an ongoing threat or is resisting and has a need to be restrained," and that the person should be restrained until they are "calm". Dkt. # 88 Ex. 3. It is undisputed that the evidence at trial showed that Plaintiff was initially actively resisting arrest. Dkt. # 88 at 8, Dkt. # 89. However it was unclear whether or how long Plaintiff continued to resist after the application of the double restraints. Price testified that after Plaintiff was hog-tied, he "continued to twitch, but [Plaintiff] was no longer able to try and gain leverage." Dkt. # 90 Ex. B.

Plaintiff also argues that the length of time he was restrained was not reasonable given the fact that he did not pose a threat to the deputies or bystanders. Buchan testified that after their initial encounter and struggle, Plaintiff continued to struggle after Buchan and Bertaina began to use their body weights to hold him, and after they placed handcuffs on him. Dkt. # 88 Ex. 1. Buchan is six feet and four inches tall, weighed between 250

ORDER – 5

and 260 pounds at the time of the arrest, and is physically bigger than Plaintiff. *Id.* Plaintiff also notes that there were eventually four deputies at the scene and while Plaintiff was hog-tied, he was unable to stand or walk, therefore Plaintiff was no longer a threat while he was restrained and outnumbered. Plaintiff also contends that he suffers from post-traumatic headaches as a result of the length of time that he was restrained, and that if he had been in the double restraints for several minutes as opposed to the alleged 40 minutes, this "would have likely eliminated the headache condition that [Plaintiff] continues to suffer from today." Dkt. # 88.

As with the length of time Plaintiff was restrained and how long Plaintiff was resisting arrest, the evidence at trial was unclear regarding the severity of the possible security problem at issue, the threat perceived by the deputies, and whether Plaintiff's headaches are related to this incident. Determination of these factors required an assessment of the credibility of the witnesses and an assessment of the circumstances surrounding the arrest. The Court may assess the credibility of the witnesses when considering whether to grant a new trial. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). However, the Court must consider whether the jury's verdict was "against the great weight of the evidence or . . . seriously erroneous," not "substitute its own inferences and credibility determinations for those of the jury" because the verdict may be contrary to the Court's own assessment of the evidence. *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1230 (9th Cir. 2001). As noted by Defendants, all of these arguments were made by Plaintiff at trial and before the jury. Therefore, in determining that Defendants did not subject Plaintiff to an objectively unreasonable degree of force, the jury considered all of the above evidence and found Defendants' witnesses and assessment of the events in question more credible than Plaintiff's.

When considering a Rule 59 motion, it is the district court's duty "to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though

ORDER – 6

supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). However, "a stringent standard applies when the motion is based on insufficiency of the evidence. A motion for a new trial may be granted on this ground only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1229 (9th Cir. 2001) (quoting *Venegas v. Wagner*, 831 F.2d 1514, 1519 (9th Cir.1987)). Here, the evidence does not definitively support Plaintiff's assessment of the events in question and a jury could have reasonably found that he did not meet his burden by a preponderance of the evidence. Therefore, Plaintiff has not shown that the jury's verdict was contrary to the clear weight of the evidence.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion for New Trial. Dkt. # 88.

DATED this 5th day of April, 2018.

The Honorable Richard A. Jones
United States District Judge

ORDER – 7